# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| **KEVIN MARTIN,** | § | |
| *Plaintiff,* | § | |
| vs. | § | CIVIL ACTION NO. 3:23-cv 00574-B |
| **PENSKE LOGISTICS, LLC** | § | |
| *Defendant.* | § | **JURY TRIAL DEMANDED** |

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Respectfully submitted,

**KILGORE & KILGORE, PLLC**

By: *W. D. Masterson*

W. D. Masterson
SBN 13184000
wdm@kilgorelaw.com
**Kilgore & Kilgore, PLLC**
3141 Hood Street, Suite 500
Dallas, TX 75219
214-969-9099 – Telephone
214-953-0133 – Fax

**ATTORNEYS FOR CLAIMANT
KEVIN MARTIN**

# TABLE OF CONTENTS

                                                                                                                      **PAGE**

TABLE OF CONTENTS ...................................................................................... ii

LIST OF EXHIBITS ........................................................................................... iii

TABLE OF AUTHORITIES .................................................................................. v

I.     INTRODUCTION ..................................................................................... 1

II.    SUMMARY JUDGMENT EVIDENCE .......................................................... 3

III.   BACKGROUND FACTS ............................................................................ 3

IV.   LEGAL STANDARD ................................................................................. 7

V.    ARGUMENT AND AUTHORITIES .............................................................. 8

       A. LEGAL AUTHORITIES ..................................................................... 8

       B. DEFENDANT'S FMLA ACTS OF DISCRIMINATION, INTERFERENCE AND RETALIATION ................................................................... 9

       C. FMLA VIOLATIONS TIMELINE AND ARGUMENT ........................... 10

       D. PLAINTIFF'S DAMAGES .............................................................. 12

VI.   PRAYER ............................................................................................... 13

       CERTIFICATE OF SERVICE ............................................................... 14

## LIST OF EXHIBITS

| Exhibit No. | Description | Page No. |
|---|---|---|
| **A.** | Declaration of Kevin Martin | PApp 4-8 |
| **B.** | FMLA Statute | PApp 9-41 |
| **C.** | Chronological Documentary evidence produced by the parties in this case. | |
| 1. | May 2, 2021<br>Photo of Plaintiff's wrecked car. (KMartin 003) | PApp 42 |
| 2. | May 2, 2021<br>Medical City Hospital Discharge Summary – Shows 2 day work excuse. (KMartin 011-12) | PApp 43-44 |
| 3. | May 2, 2021<br>State Farm Insurance claim for car and lost income. (KMartin 26) | PApp 45 |
| 4. | May 14, 2021<br>FMLA Source Leave Claim. (Penske 24-29) | PApp 46-51 |
| 5. | May ___, 2021<br>Undated Statement of Shvon Evans of leave from May 2, 2021 to May 5, 2021 and of Kevin's lost income for a week off. (KMartin 024) | PApp 52 |
| 6. | May 21, 2021<br>State Farm Check Stub for $1,260.60 for lost pay per Shvon Evans statement. (KMartin 023) | PApp 53 |
| 7. | June 2, 2021<br>FMLA Source Denial of FMLA claim for failure to file documentation on time. (Penske 18) | PApp 54 |
| 8. | June 8, 2021<br>Penske Leave of Absence Team Advises HR that May 2, 2021 – May 5, 2021 FMLA Claim was Denied For Failure to File Documentation For Leave and HR issues 4.5 attendance points. Exhibit ___ (KMartin 013) | PApp 55 |
| 9. | June 11, 2021<br>UNUM, Penske Short Term Disability Carrier Approves Kevin's Short Term Disability claim for May 2, 2021 – May 4, 2021. (KMartin 029) | PApp 56 |

| | | |
|---|---|---|
| 10. | June 15, 2021<br>Penske Corrective Counseling Form Showing on the last page 6.5 attendance points for May 2, 2021 including 4 points from May 2, 2021 – May 4, 2021.  (KMartin 15-18) | PApp 57-60 |
| 11. | June 21, 2021<br>Termination Action Form Shing that Plaintiff was fired for attendance points by Shvon Evans and 1 other employee when Shvon had known and approved Plaintiff's absence and lost of income in Exhibit C-5 *supra*.  (Penske 16-17) | PApp 61-62 |
| 12. | FMLA Source approval of FMLA claim from May 2, 2021 – May 4, 2021.  (Penske 21-22) | PApp 63-64 |
| 13. | State Farm approval of medical claim in auto liability policy for $1,516.  (KMartin 27-35) | PApp 65-73 |

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .................................................................................................. 8

*Haley v. Alliance Compressor LLC*,
    391 F.3d 644 (5th Cir. 2004) .................................................................................... 8

*Kauffman v. Fed. Express Corp.*,
    426 F.3d 880 (7th Cir. 2005) .................................................................................... 8

*Leonard v. Dixie Well Serv. & Supply, Inc.*,
    828 F.2d 291 (5th Cir. 1987) .................................................................................... 8

*Matsushita Elec. Indus. Co. v. Zenith Radio*,
    475 U.S. 574 (1986) .................................................................................................. 8

*Wysong v. Dow Chem. Co.*,
    503 F.3d 441 (6th Cir. Ohio 2007) ........................................................................... 9

**Statutes**

29 U.S.C. 2611 (11) ........................................................................................................ 8

29 U.S.C. 2617 ................................................................................................................ 9

29 U.S.C. § 2615(a)(1) ............................................................................................... 8, 9

29 U.S.C § 2617(a)(1)(A)(i)-(ii) ..................................................................................... 9

29 U.S.C § 2617(a)(3) .................................................................................................... 9

FMLA ..................................................................................................................... *passim*

FMLA Section 105 ......................................................................................................... 9

FMLA section 825.220 ................................................................................................... 9

FMLA Section 2617 ....................................................................................................... 3

**Other Authorities**

Fed. R. Civ. P. 56 ........................................................................................................... 7

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **KEVIN MARTIN,** | § § § § | |
| *Plaintiff,* | | |
| vs. | § § | CIVIL ACTION NO. 3:22-cv 00574-B |
| | § § | |
| **PENSKE LOGISTICS, LLC** | § § | **JURY TRIAL DEMANDED** |
| *Defendant.* | § § § § | |

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, Plaintiff Kevin Martin ("Plaintiff") and files this Motion for Summary Judgment against Defendant Penske Logistics, LLC ("Defendant"), and in support thereof respectfully shows the Court as follows:

**I.**

**INTRODUCTION**

1.01   Plaintiff Kevin Martin was in a car wreck which caused injuries to his neck and back. Plaintiff asked for accommodations from Defendant but Defendant refused. Plaintiff was then terminated by charging days he was on FMLA leave as time off without leave, and assigning adverse points for days on which Plaintiff was on FMLA leave.

1.02   Plaintiff has a straightforward case for summary judgment for FMLA discrimination, interference and retaliation in this case based upon the documents attached as

**Exhibits C** hereto and itemized in chronological order in **Exhibit C**.

1.03   Plaintiff's car hit a puddle of water on a freeway, hydroplaned out of control and hit a wall in a collision which totaled Plaintiff's car as shown in **Exhibit C-1**, PApp 4-8, resulting in injuries to Plaintiff's neck and back as determined by the Medical City Hospital where Plaintiff was taken for treatment and excused from work as shown in **Exhibits C-7,** PApp 54, from the hospital and **Exhibit C-5**, PApp 52, a letter from Plaintiff's supervisor Shvon Evans confirming Plaintiff's leave from work and loss of weekly earnings.

1.04   Plaintiff furnished photographic evidence of the crash and the hospital examination and leave excuse to his supervisor, Shvon Evans, and requested FMLA leave. Evans accepted the request for FMLA and issued her confirmation of the leave and a statement of Plaintiff's lost earnings for the week of injury on a statement attached as **Exhibit C-5**, PApp 52.  Plaintiff was entitled to 3 forms of relief, all of which he received except recognition of his FMLA leave for attendance purposes:

1. FMLA leave allowed by FMLA Source. **Exhibit C-12**, PApp 63-64;
2. Disability income from UNUM, Defendant's Short Term Disability income carrier, **Exhibit C-9**, PApp 56;
3. Personal injuries suffered in the crash covered by Plaintiff's State Farm car insurance carrier.  See **Exhibit C-13**, PApp 65-73.

1.05   The only relief which Plaintiff has failed to receive has been for his termination as a result of Defendant's false charging of his FMLA. 3 day leave granted by Defendant's service company FMLA Source in **Exhibit C-12**, App 63-64, as points against Plaintiff's attendance. Instead, Defendant asserted an erroneous statement of denial of FMLA leave in **Exhibit C-7**, PApp 54, to charge Plaintiff with absences for his 3 days of allowed leave in

**Exhibit C-10**, PApp 57-60, and terminated Plaintiff in **Exhibit C-11**, PApp 61-62, for violation of Defendant's attendance policy.

1.06    The foregoing conduct by Defendant has violated FMLA rules and regulations which specifically forbid charging employees with violation of attendance rules for taking FMLA authorized leave.

1.07    The statement of weekly earnings by Plaintiff's supervisor in **Exhibit C-5**, PApp 52, which included a 60 hour work schedule, overtime pay and incentive pay, furnishes a detailed basis for an award of back pay and front pay damages.  The aforesaid conduct of Defendant in egregiously terminating Plaintiff in violation of FMLA rules and regulations supports an award of liquidated damages under Section 2617 of the FMLA Statute by doubling the lost earnings damages.

## II.

## SUMMARY JUDGMENT EVIDENCE

2.01    To support the facts in this motion, Plaintiff offers the following summary judgment evidence attached to this motion and incorporates the evidence into this motion by reference.

|   |   |   |
|---|---|---|
| Exhibit A: | | Declaration of Plaintiff  Kevin Martin |
| Exhibit B: | | FMLA Statute |
| Exhibit C: | | Documentary evidence produced by the parties in this case. |

## III.

## BACKGROUND FACTS

3.01    The following facts are supported by the Declaration of Plaintiff attached as **Exhibit A**, PApp 4-8 hereto:

3.02    Plaintiff began working for Penske in 2016 as a Loader earning an annual compensation of $24,802.00.

3.03    Plaintiff was a hard working model employee.  But for the first three years being employed by Penske Logistics Plaintiff never received a raise or an annual evaluation.

3.04    Throughout the years that Plaintiff had been employed with Penske Logistics, Plaintiff had been discriminated against on several different occasions. In 2017 Plaintiff was told by (Senior Operations Supervisor ) Theodore Kebede, that if he was to move from day shift as a lead to night shift, Plaintiff would be given the opportunity to become the night shift supervisor. At this time Shvon Evans was the night supervisor.  She requested to move to day shift which would only happen if Plaintiff moved to the night shift.  Plaintiff agreed to the switch because Plaintiff was told by Teddy Kebede that Plaintiff would become the night shift supervisor, which would have come with a $15,000 dollar raise annually and greater benefits.

3.05    Shvon Evans was the supervisor who trained Plaintiff to become the night shift supervisor.  Plaintiff was working night shift for a full year but still remained as a lead doing supervisor work without supervisor pay. In 2018 Plaintiff went back to day shift as a lead. Plaintiff had only agreed to nights because it was a supervisor position that was promised to him. Once Plaintiff went back to the day shift  Anthony Williams was Plaintiff's immediate supervisor.

3.06    Plaintiff felt overwhelmed, stressed, humiliated, unappreciated, physically, emotionally and mentally drained from doing  supervisor work without the supervisor position and pay.

3.07    Plaintiff was verbally told by Dennis Holmes in 2017 (supervisor) that if Plaintiff cut his dreadlocks, they would select Plaintiff as a supervisor.  Holmes further said that this was mentioned in leadership meetings. Plaintiff felt shocked. Plaintiff never decided to cut his hair

because he should be judged on his work performance, not his race, sex, gender, religion, national origin, ethnicity, or sexual orientation.

3.08    In 2020 Plaintiff was asked to accept the lead position by Shvon Evans on her shift. Plaintiff agreed to the position which came with more pay, which Plaintiff was given. In 2020, Plaintiff's compensation was $55,960.  Shvon Evans was Plaintiff's immediate supervisor from 2020 until the day Plaintiff was wrongfully terminated.

3.09    In 2021 a supervisor position became available. Plaintiff was encouraged to apply for the position by Shvon Evans and Craig Whisler  (Operations Manager).  Plaintiff was told by Craig Whistler that Plaintiff would receive 2 interviews. Plaintiff only received one with Craig Whistler, who told Plaintiff their interview went great and he would let Plaintiff know when he was going to schedule the next interview with the General Manager Scott Long.

3.10    That interview never happened.  During the weekly meeting, Shvon Evans and Craig Whistler made the announcement that Earl Johnson was selected as the new supervisor. Plaintiff had trained Earl Johnson.  Plaintiff felt humiliated and unappreciated in front of all his co-workers. Everyone in the meeting was surprised with disappointment on their faces.  Plaintiff was a leader who never let his teamwork without help or without equal amounts of work among all. So they wanted the position for Plaintiff just as much as he felt he deserved it.

3.11    On May 2,2021 Plaintiff was involved in an automobile accident. Plaintiff was diagnosed with medical conditions: neck and back pain, with Diagnosis Codes: M54.2 – Cervicalgia M54.5-   Low Back Pain, M54.6-  Pain in thoracic Spine, V45.5XXA- car driver injured in collision with railway vehicle in a traffic accident), and informed Senior Operations Supervisor Shvon Evans of the same.

3.12    On May 7,2021 Plaintiff received a call from Shvon Evans stating that she, Craig

Whistler (Operations Manager), and Atziri Cardoza(HR Manager) were mad at Plaintiff due to the days Plaintiff missed. Plaintiff once again explained to her that he was involved in a bad car wreck and that he could have lost his life and he was in serious pain. Shvon responded by telling Plaintiff that he was acting as if they were trying to fire him and if he were to come back to work Plaintiff wouldn't have to worry about getting fired.

    3.13    Plaintiff was forced to come back to work with medical conditions that compelled Plaintiff to be absent from work for approximately one week. Plaintiff personally gave Shvon Evans the ER discharge papers with all of his supporting documents Plaintiff had as proof of the automobile accident to support his absences upon his return to work. The only paper Plaintiff hadn't received was the approval from FMLA.

    3.14    During the time Plaintiff went back to work, his work performance decreased due to the severe muscle spasms he was experiencing in his neck and back. Plaintiff was trying his best to perform like he did before the car accident but the pain wouldn't allow him to.

    3.15    Plaintiff went to Shvon Evans and asked her to allow him to do observations because Plaintiff couldn't continue to work efficiently due to his medical condition and pain. Plaintiff was told by Shvon Evans she couldn't accommodate Plaintiff because of being short staffed.

    3.16    On June 16, 2021 Shvon Evans and David Bradley (Lead) called Plaintiff on the phone and verbally told Plaintiff that he was suspended pending investigation of the days Plaintiff missed. Plaintiff was told that he would be receiving a call from HR by the 20th to let Plaintiff know if they were going to fire him. Plaintiff never received a call from HR. Shvon Evans and Craig Whistler called Plaintiff on June 22, 2021 and told Plaintiff over the phone he was terminated due to "attendance points" and failure to provide documentation from the days Plaintiff missed.

This was the exact day Plaintiff received a letter from Short Term Disability carrier Unum informing Plaintiff that he was approved from May 2, 2021 through May 4, 2021.

    3.17    Penske Logistics interfered with Plaintiff's FMLA. Defendant didn't allow enough time for all documentation to be approved before they wrongfully terminated Plaintiff. Before the car accident Plaintiff had zero points. Shvon Evans wrote a letter to Plaintiff's insurance company State Farm stating how many days Plaintiff was out, his pay amount, incentives, and the amount of overtime Plaintiff was getting. How would Shvon Evans be able to write the letter to State Farm if Plaintiff never gave her any documentation?

    3.18    In calculating Plaintiff's attendance points, Penske Logistics included absences that were taken on FMLA leave due to Plaintiff's medical condition.

    3.19    Plaintiff never received any of the FMLA Source FMLA documents until after suit was filed. The FMLA Source document attached as **Exhibit C-7**, PApp 54 stating that no medical certification document had been furnished was never sent to Plaintiff. However, Plaintiff had produced all Plaintiff's medical data to Shvon Evans, Plaintiff's supervisor, before the June 2, 2021 date of the **Exhibit C-7**, PApp 54 document as shown by **Exhibit C-5**, PApp 52.

    3.20    Plaintiff's production is confirmed by the statement of Shvon Evans attached as **Exhibit C-5**, PApp 52. The FMLA Source document correcting the **Exhibit C-7**, PApp 54 disallowance of FMLA leave is attached as **Exhibit C-12**, PApp 63-64.

## IV.
## LEGAL STANDARD

    4.01    The Court must grant summary judgment when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The movant

bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which movant believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet its burden by identifying elements of a plaintiff's claims that are not supported by any evidence. *Id.* The burden then shifts to the non-moving party to establish the existence of a genuine issue for trial, which requires "more than simply show that there is some metaphysical doubt as to the material facts . . ." *See, e.g.*, *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 585 (1986); *Leonard v. Dixie Well Serv. & Supply, Inc.*, 828 F.2d 291, 294 (5th Cir. 1987).

## V.

## ARGUMENT AND AUTHORITIES

**A.     Legal Authorities.**

5.01    Plaintiff was an eligible employee under the FMLA. Plaintiff had worked for Defendant for at least twelve (12) months and had worked at least 1,250 hours during the twelve (12) months prior to taking the leave.

5.02    Defendant was subject to the provisions of the FMLA. Defendant employed at least fifty (50) employees within a seventy-five (75) mile radius of Plaintiff's work site for twenty (20) or more work weeks in the prior or current calendar year.

5.03    Plaintiff suffered from one or more "serious health conditions" as defined by the FMLA. 29 U.S.C. 2611 (11), arising out of Plaintiff's auto accident.

5.04    Defendant interfered with Plaintiff in the exercise of his FMLA rights by terminating his employment after FMLA leave. Plaintiff made good faith efforts to submit all respective medical certifications for his FMLA leave.

5.05    The FMLA's interference provision makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise," any substantive FMLA right. 29 U.S.C. §

2615(a)(1); *see also Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004); *Kauffman v. Fed. Express Corp.*, 426 F.3d 880, 884 (7th Cir. 2005). Notably, a claim that an employee was terminated for taking FMLA leave is cognizable under *both* an interference or prescriptive claim under 29 U.S.C. §2615(a)(1), or under a retaliation or proscriptive claim under §2615(2). *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 447 n.2 (6th Cir. Ohio 2007).

   5.06 As a result of his wrongful termination, Plaintiff has suffered damages in the form of lost wages and benefits. Plaintiff is entitled to back pay, plus interest on that amount, and front pay to compensate his for that loss. 29 U.S.C § 2617(a)(1)(A)(i)-(ii).

   5.07 The aforementioned acts were and are a willful violation of the FMLA, and entitle Plaintiff to recover damages as provided by 29 U.S.C. 2617, including liquidated damages. Plaintiff further seeks reinstatement to his position or a comparable position with reinstatement of benefits and seniority time.

   5.08 As a result of Defendant's actions, Plaintiff has found it necessary to hire the services of the undersigned attorneys, for which Plaintiff seeks further relief. 29 U.S.C § 2617(a)(3).

**B.**  **Defendant's FMLA Acts of Discrimination, Interference and Retaliation.**

   5.09 Section 105 of the FMLA and section 825.220 of the FMLA regulations prohibit the following actions:

- An employer is prohibited from interfering with, restraining, or denying the exercise of, or the attempt to exercise, any FMLA right.

- An employer is prohibited from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise any FMLA right.

- An employer is prohibited from discharging or in any other way discriminating against any person, whether or not an employee, for opposing or complaining about any unlawful practice under the FMLA.

- All persons, whether or not employers, are prohibited from discharging or in any other

way discriminating against any person, whether or not an employee, because that person has —

- Filed any charge, has instituted, or caused to be instituted, any proceeding under or related to the FMLA;
- Given, or is about to give, any information in connection with an inquiry or proceeding relating to any right under the FMLA; or
- Testified, or is about to testify, in any inquiry or proceeding relating to a right under the FMLA.

Examples of prohibited conduct include:

- Refusing to authorize FMLA leave for an eligible employee,
- Discouraging an employee from using FMLA leave,
- Manipulating an employee's work hours to avoid responsibilities under the FMLA,
- **Using an employee's request for or use of FMLA leave as a negative factor in employment actions, such as hiring, promotions, or disciplinary actions, or,**
- **Counting FMLA leave under "no fault" attendance policies.**

5.10   Any violations of the FMLA or the Department's regulations constitute interfering with, restraining, or denying the exercise of rights provided by the FMLA.

C.   **FMLA Violations Timeline and Argument.**

5.11   Defendant's FMLA violation are clear from the following timeline based on the **Exhibit C** exhibits.

| Date | Event |
|---|---|
| May 2, 2021 | Plaintiff has an auto accident which totals his car, is taken to Medical City Hospital and given a two day excuse from work. |

|  | Exhibits C-1; C-7 |
|---|---|
| May 2, 2021 | Plaintiff files personal injury claim with State Farm, his auto insurance carrier. Exhibit C-3 |
| May ___, 2021 | Plaintiff is called back to work, asks for FMLA leave from his supervisor Shvon Evans, who confirms a 4 day disability and the amount of his weekly earnings claim in Exhibit C-5. |
| May 14, 2021 | FMLA Source confirms FMLA leave from May 2, 2021 – May 10, 2021 with medical certification but does not mail or otherwise notify Plaintiff of the "subject to" term of allowance. Exhibit C-4 |
| May 21, 2021 | State Farm pays Plaintiff for his auto policy personal income protection coverage in the amount of $1,269. Exhibit C-6 |
| June 2, 2021 | FMLA Source denies FMLA coverage because Defendant failed to give FMLA Source the documents produced by Plaintiff to his supervisor, who approved leave in Exhibit C-5. FMLA source withdrew the denial, and approved Plaintiff's FMLA leave in Exhibit C-12. |
| June 8, 2021 | Defendant's HR ordered issuance of non-attendance points. |
| June 15, 2021 | Shvon Evans, who approved Plaintiff's leave in Exhibit C-5, issued attendance points for May 2, 2021 – May 5, 2021, which she had specifically approved in Exhibit C-5. |
| June 21, 2021 | Shvon Evans and another manager terminated Plaintiff for 6.5 attendance points, the amount required for termination, which required the 4 points charged for May 2, 2021 – May 5, 2021 which Evans approved in Exhibit C-5. |
| June 22, 2021 | FMLA Source corrected its previous denial of FMLA leave in Exhibit C-7 and Exhibit C-12. |
| July 23, 2021 | State Farm paid Plaintiff $1,516 for his personal injuries suffered in the car crash. |

5.12   Plaintiff submits that the documentary record in this case conclusively establishes that Plaintiff's leave was approved first by Defendant through Plaintiff's supervisor Shvon Evans in **Exhibit C-5**, PApp 52 and by Defendant's FMLA service company FMLA Source in **Exhibit C-12**, PApp 63-64. The validity of Plaintiff's leave was also affirmed by

State Farm in **Exhibits C-6**, PApp 53 and **C-13**, PApp 65-73 and by UNUM, Defendant's own Short Term Liability carrier, in **Exhibit C-9**, PApp 56. Under these circumstances liquidated damages should be awarded.

### D.   Plaintiff's Damages.

5.13   The statement of Plaintiff's supervisor Shvon Evans establishes Plaintiff's weekly wage at $1,587 as follows:

```
40 hours at $18.39/hr      = $  735.60
20 hours OT at $27.57/hr   = $  551.40
Weekly incentives          = $  300.00
                             $1,587.00
```

Monthly earnings = $1,587.00/week x 4 = $7,935/mo
Back Pay - $7,935/mo x 31 mos = $245,985

Front Pay = $7,935/mo x 24 mos = $190,440

```
     Back Pay     =$245,985
     Front Pay    =$190,440
Total Lost Earnings =$436,425
```

Liquidated Damages  $436,425

```
Total Damages
Lost Earnings          $436,425
Liquidated Damages     $436,425

Total Damages          $872,850
```

5.14   Defendant can be expected to argue that Plaintiff has failed to mitigate his damages because Plaintiff should have been able to find another warehouse job by now. However, a new employer virtually always inquires as to why Plaintiff lost his last job. Plaintiff has to reply truthfully because any background check will establish that Plaintiff was fired for violation of Defendant's attendance policy. Plaintiff also states to prospective employers that Plaintiff considers his termination to have violated the FMLA, and that Plaintiff is litigating the

issue.

5.15    To date prospective employers have been unwilling to risk litigation by hiring Plaintiff. Plaintiff, together with his wife and family, has been compelled to live on his wife's earnings pending an award in this case.

## VI.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**,

6.01    Plaintiff respectfully prays that this Court grant his Motion for Summary Judgment, and for such other and further relief, both general or special, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

**KILGORE & KILGORE, PLLC**

By:  *W. D. Masterson*
**W. D. MASTERSON**
State Bar No. 13184000
3141 Hood Street, Suite 500
Dallas, Texas 75219
214-969-9099 - Telephone
214-953-0133 – Facsimile
wdm@kilgorelaw.com

**ATTORNEY FOR PLAINTIFF
KEVIN MARTIN**

## CERTIFICATE OF SERVICE

      This is to certify that a true and correct copy of the foregoing document has been served on Defendant's counsel of record via E-File and/or email, on this 20th day of December, 2023:

John B. Brown
Ogletree, Deakins, Nash, Smoake & Stewart, P.C.
8117 Preston Road, Suite 500
Dallas, Texas 75225.
john.brown@ogletreedeakins.com


                                                *W. D. Masterson*
                                                W. D. Masterson