UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

KEVIN MARTIN,                        §
                                     §
    Plaintiff,                       §
                                     §
v.                                   §    CIVIL ACTION NO. 3:23-CV-0574-B
                                     §
PENSKE LOGISTICS, LLC,               §
                                     §
    Defendant.                       §

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Plaintiff Kevin Martin's Motion for Summary Judgment (Doc. 18) and Defendant Penske Logistics, LLC ("Penske")'s Motion for Summary Judgment (Doc. 29). For the reasons set forth below, the Court **DENIES** Martin's Motion for Summary Judgment and **GRANTS IN PART** and **DENIES IN PART** Penske's Motion for Summary Judgment. The Court **DISMISSES** Martin's claims for discrimination and retaliation under the Family Medical Leave Act ("FMLA") and his claim for disability discrimination under the Americans with Disabilities Act ("ADA"). Martin's claim for FMLA interference, his claim for disability discrimination under the Texas Commission on Human Rights Act ("TCHRA"), and his claims for retaliation under Title VII of the Civil Right Act of 1964 ("Title VII") and the TCHRA will proceed to trial.

## I.

## BACKGROUND

This is an employment case. Martin was hired by Penske in 2016. Doc. 33-13, Pl.'s App'x, 62. In May 2021, Martin was in a car accident and missed several days of work as a result. Doc. 34-

1, Def.'s App'x, 2–3. A month after the accident, Martin was fired purportedly for violating Penske's attendance policy. Doc. 33-1, Pl.'s App'x, 7. Martin claims his termination was unlawful and thus initiated this lawsuit against his former employer. *See generally* Doc. 1, Compl.

Penske is a transportation and distribution company that operates warehouses throughout the United States. Doc. 30, Def.'s Br., 3–4. Penske's employees are subject to the company's "no-fault" attendance policy. *See* Doc. 23, Def.'s App'x, 2–3. Under this attendance policy, an employee is assessed one attendance "point" for each "absence that is not protected by [Penske] policy or by law" and one-half attendance point for arriving late or leaving early. *Id.* at 3. However, Penske "reserve[d] the right to treat any [employee] outside these guidelines if, in local management's opinion, the [employee's] pattern of attendance justifies more severe action[] (e.g. a 'no call, no show' failure to report an unplanned absence may result in two (2) points being assessed)." *Id.* Penske's attendance policy also provided for certain corrective action in the event an employee accrued a certain number of attendance points. *See id.* Specifically, Penske issues a verbal warning if an employee accrues four attendance points and a written warning if an employee receives a fifth attendance point. *Id.* Once an employee receives six attendance points, Penske gives the employee a final written warning. *Id.* Finally, the attendance policy states that any employee who receives seven or more attendance points in a rolling twelve-month period is subject to termination with approval from Penske's Human Resources ("HR") department. *Id.*

Martin worked for Penske from 2016 to 2021. Doc. 33-13, Pl.'s App'x, 62. On May 2, 2021, at approximately 4 o'clock in the morning, Martin crashed his car while he was on his way to work. Doc. 31, Def.'s App'x, 16–19. Immediately following the accident, Martin proceeded to a local hospital to seek medical care. *Id.* at 18–19. Martin was discharged from the hospital at

approximately 8:00 o'clock in the morning. *Id.* at 37. Martin's discharge paper stated that he could return to work in two days with no restrictions. *Id.*

As a result of the accident, Martin missed his scheduled shifts at Penske on May 2, 3, 4, and 5. *See id.* at 22–26, 38. Martin returned to work May 9, 2021, at which time he provided his supervisor, Shvon Evans, with his hospital discharge papers. *See id.* at 25–26; Doc. 33-1, Pl.'s App'x, 6. After working a full shift on May 9, Martin proceeded to miss work the following two days: May 10 and May 11. Doc. 31, Def.'s App'x, 25–26, 38.

On May 14, 2021, Martin filed a request for FMLA leave with Penske's third-party leave administrator, FMLA Source. *See id.* at 38. Martin requested that his six May absences (May 2–5, 10–11) be retroactively deemed FMLA leave. *See id.* FMLA Source acknowledged its receipt of Martin's request the same day. *Id.* In that acknowledgement, FMLA Source notified Martin that it had not made a decision on his request for FMLA leave because Martin had not submitted the requisite certifications; FMLA Source also explained that Martin needed to file these certifications by June 1, 2021. *Id.* at 38–39.

On June 2, 2021, FMLA Source denied Martin's request for FMLA leave in its entirety. *Id.* at 44. The stated reason for the denial was "Documentation for Leave not Received." *Id.* On June 8, 2021, Penske's HR Manager, Atziri Cardoza, received an email from Penske's Leave of Absence Team which stated: "[Martin's] FMLA: Continuous from 5/2/2021 to 5/5/2021, and 5/10/2021 to 5/11/2021 has been denied for not sending in his documentation for leave." Doc. 33-10, Pl.'s App'x, 55. Two minutes after receiving this email, Atziri informed Martin's supervisor that "[Martin's] [leave of absence] was denied due to lack of documentation. Please issue him attendance points and the respective [corrective counseling]." *Id.*

On June 15, 2021, Martin's supervisor issued Martin a "corrective counseling form," which purportedly served as Martin's final written warning under the attendance policy. Doc. 31, Def.'s App'x, at 47–48; Doc. 33-12, Pl.'s App'x, 59–60. The corrective counseling form stated that Martin had accrued 6.5 attendance points and that he was expected to attend work on all scheduled days. Doc. 31, Def.'s App'x, at 47–48; Doc. 34-1, Def.'s App'x, 2–3; Doc. 33-12, Pl.'s App'x, 59–60. Martin refused to sign the corrective counseling form. Doc. 31, Def.'s App'x, at 47–48; Doc. 34-1, Def.'s App'x, 2–3; Doc. 33-12, Pl.'s App'x, 59–60.

On June 16, 2021—the day after having received his corrective counseling form—Martin did not appear for work. Doc. 33-13, Pl.'s App'x, 62. He was suspended the same day pending an investigation. Doc. 33-1, Pl.'s App'x, 7. On June 21, 2021, Penske's HR Manager completed a "termination action form," which recommended that Martin be fired. Doc. 33-13, Pl.'s App'x, 61–62. The termination action form stated that Martin "failed to provide the appropriate medical certification to approve several absences that he had in the month of May and that had resulted in him accruing 6.5 points." *Id.* Penske terminated Martin's employment the following day, June 22, 2021. Doc. 33-1, Pl.'s App'x, 7. However, the same day that Martin was fired, FMLA Source partially reversed its decision on Martin's request for FMLA leave and granted Martin FMLA leave for three of the six days that he initially requested: May 2–4. Doc. 33-14, Pl.'s App'x, 63.

Following his termination, Martin initiated the present litigation against Penske. *See* Doc. 1, Compl. Martin asserts claims against Penske under the FMLA, ADA, TCHRA, and Title VII. *See id.* ¶¶ 5.01–7.06. Martin alleges that Penske interfered with his rights under the FMLA by counting the days in which he was granted FMLA leave when calculating his total attendance points. *See id.* ¶¶ 4.18–5.06. He separately asserts that Penske terminated his employment in retaliation for taking FMLA leave. *Id.* ¶¶ 5.01–.06. Martin also maintains that, after the accident,

he was temporarily disabled and that the Penske discriminated against him on the basis of this disability by firing him in violation of the ADA and TCHRA. *See id.* ¶¶ 6.01–.09. Lastly, Martin alleges that Penske retaliated against him for objecting to unlawful employment practices under Title VII and the TCHRA. *See id.* ¶¶ 7.01–.06.

Both parties have since moved for summary judgment. Doc. 18, Pl.'s Mot; Doc. 29, Def.'s Mot. Martin only seeks summary judgment on his FMLA claims, arguing that he has proved his interference and retaliation claims as a matter of law. *See* Doc. 18, Pl.'s Mot., ¶¶ 5.01–15. Penske moved for summary judgment on Martin's claims under the FMLA, ADA, and Title VII. *See* Doc. 29, Def.'s Mot., 1–4; Doc. 30, Def.'s Br., 1, 8–23. Both motions are fully briefed and ripe for review. The Court considers them below.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The substantive law governing a matter determines which facts are material to a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The summary-judgment movant bears the burden of proving that no genuine issue of material fact exists. *Latimer v. Smithkline & French Lab'ys*, 919 F.2d 301, 303 (5th Cir. 1990). Usually, this requires the movant to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citations omitted).

Once the summary-judgment movant has met this burden, the burden shifts to the non-movant to "go beyond the pleadings and designate specific facts" showing that a genuine issue exists. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (citations omitted). Instead, the non-moving party must "come forward with specific facts showing that there is a *genuine issue for trial.*" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis in original) (citations omitted).

"[C]ourts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted). But the Court need not "sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citations omitted). If the non-movant is unable to make the required showing, the Court must grant summary judgment. *Little*, 37 F.3d at 1076.

## III.

### ANALYSIS

Martin asserts a total of six claims in this litigation: (1) an FMLA interference claim; (2) an FMLA retaliation claim;[1] (3) an ADA discrimination claim; (4) a TCHRA disability discrimination claim; (5) a Title VII retaliation claim; and (6) a TCHRA retaliation claim. Doc.

---

[1] In addition to his FMLA retaliation claim, Martin also asserts a claim for FMLA discrimination. *See* Doc. 1, Compl., ¶¶ 5.01–.06. While a claim for FMLA discrimination is technically distinct from a claim for FMLA retaliation, the two are substantively identical, and courts treat them interchangeably. *Cf. Bocalbos v. Nat'l W. Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1998). Thus, the Court treats Martin's FMLA retaliation and discrimination claims as a single cause of action, referring to both claims as simply "FMLA retaliation."

1, Compl., ¶¶ 5.01–7.06. Martin and Penske have filed cross motions for summary judgment on Martin's two FMLA claims—i.e., FMLA interference and retaliation. Penske has further moved for summary judgment on Martin's third claim—ADA discrimination. Penske also purports to move on a supposed sex discrimination claim.

The Court concludes that Martin's summary judgment motion should be denied in its entirety and that Penske's motion should be granted in part and denied in part. The Court's analysis of the parties' motions proceeds in two parts. First, the Court resolves preliminary issues raised in the parties' summary judgment briefing. Specifically, Penske has raised several evidentiary objections to Martin's summary judgment evidence, and Martin has moved to strike Penske's motion for summary judgment. Second, after resolving these threshold issues, the Court turns to the merits of the parties' summary judgment motions.

A.   *Preliminary Issues*

Before turning to the merits of the summary judgment motions, the Court must first resolve two threshold questions raised in the parties' briefing. The first is Penske's objections to Martin's summary judgment evidence. The second is Martin's motion to strike Penske's summary judgment motion. The Court overrules Penske's evidentiary objections and denies Martin's motion to strike.

1.   Penske's Evidentiary Objections

Penske objects to Martin's declaration which is attached in support of his motion for summary judgment as containing "self-serving, conclusory and unsubstantiated statements, and blanket legal conclusions."[2] Doc. 22, Def.'s Resp., 12; *see also* Doc. 19-1, Pl.'s App'x, 4–8. And,

___

[2] Penske also objects to a photograph of Martin's vehicle that was taken after his car accident. Doc. 22, Def.'s Resp., 11. The Court did not consider this evidence in ruling on the parties' motions and thus the need not consider the merits of Penske's objection to this evidence.

according to Penske, "of the 21 allegations contained in Martin's Declaration . . . 18 are improper and unsubstantiated by the record." Doc. 22, Def.'s Resp., 12–16. For these reasons, Penske asks that the Court strike the declaration. *Id*. at 12.

The Court declines Penske's invitation to disregard Martin's declaration. First, the Federal Rules of Evidence present no bar to "self-serving" evidence. *See Dean v. Ford Motor Credit Co.*, 885 F.2d 300, 306 (5th Cir. 1989) ("[C]haracterizing a party's testimony as 'self serving' is not useful to the court. In a lawsuit, where each party is attempting to advance his own cause and protect his own interests, we are scarcely shocked when a party produces evidence or gives testimony that is 'self-serving.'"). Second, Martin's declaration is itself evidence and thus does not require further substantiation. *See* FED. R. CIV. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including . . . *declarations* . . . ." (emphasis added)). For example, Penske objects to the following statement in Martin's declaration as unsubstantiated: "'I began working for Penske in 2016 as a Loader[,] moving up to a lead[,] earning an annual compensation of $ 55,960.'" Doc. 22, Def.'s Resp., 12 (alterations in original) (quoting Doc. 19-1, Pl.'s App'x, 4). It is true that Martin did not, in his declaration, cite other evidence to substantiate this claim. *See* Doc. 19-1, Pl.'s App'x, 4. But Martin's declaration is itself evidence of the fact that he worked for Penske since 2016 and eventually earned an annual compensation of $ 55,960. *See* FED. R. CIV. P. 56(c)(1)(A). To require a declarant cite to authority for each proposition contained therein would essentially render declarations meaningless. Third, to the extent that Martin's declaration contains legal conclusions, the Court does not consider such statements in resolving the merits of the parties' motions.

In sum, Penske argued that Martin's declaration should be stricken for three reasons. The Court finds each argument unpersuasive and thus **OVERRULES** Penske's objection.

2.      Martin's Motion to Strike Penske's Motion for Summary Judgment

Martin asks that the Court strike Penske's Motion for Summary Judgment. *See* Doc. 32, Pl.'s Resp., 1–3. According to Martin, Penske's motion "is founded upon a false and fraudulent document." *Id*. at 2. Specifically, Martin claims that the Corrective Counseling Form appended to Penske's motion is "materially and virtually different from the Corrective Counseling Form given to Martin when he was terminated." *Id*.; *see also* Doc. 31, Def.'s App'x, 47–48.

Martin cites no authority which permits a court to strike a dispositive motion that relies in part on a "fraudulent document." But even assuming that such relief may be warranted in certain instances, Martin has not shown how Penske's corrective counseling form is fraudulent. Martin's argument is essentially that Penske's document is fraudulent because it is different than his. *See* Doc. 32, Pl.'s Resp., 1–3. This, of course, assumes that Martin's corrective counseling form is the true form that was provided to him, a fact issue more appropriately resolved at trial than a basis for striking an opponent's summary judgment motion. *See Anderson*, 477 U.S. 242, 248–50. Aside from the differences between the two documents, Martin presents no evidence that plausibly suggests the corrective counseling form appended to Penske's motion is fraudulent.

Moreover, while Martin is correct that there are differences between the two corrective counseling forms, they are substantively consistent in most material respects: both were addressed to Martin, filled out by the same supervisor on the same date, and stated that this was a final written warning. *Compare* Doc. 31, Def.'s App'x, 47–48, *with* Doc. 33-12, Pl.'s App'x, 59–60. The major difference between the two is that Martin's corrective counseling form states, "German has 6.5 points for attendance" and is unsigned, Doc. 33-12, Pl.'s App'x, 60, while Penske's form states "[Martin] has 6.5 points for attendance" and is signed by Martin's supervisor, Doc. 31, Def.'s App'x, 47–48. Although Martin's corrective counseling form provides that an individual named

"German" had 6.5 points, Doc. 33-12, Pl.'s App'x, 60, Martin testified that he received a corrective counseling form from Penske on June 15, 2021, that indicated that he had 6.5 attendance points, Doc. 34-1, Def.'s App'x, 2–3. Thus, both parties appear to be in agreement that Martin received written notice from Penske that he had accrued 6.5 attendance points as of June 15, 2021. *See id.* This is what matters for purposes of Martin's FMLA claims. *See infra.* III.B.1.

Aside from the differences between the corrective counseling forms themselves, Martin also takes issue with an attendance calendar which is attached to Penske's corrective counseling form. *See* Doc. 32, Pl.'s Resp., 1–3; *see also* Doc. 31, Def.'s App'x, 49–58. This calendar indicates that Martin was absent on certain days which Martin disputes. It is unclear whether Martin is also claiming that the calendar is fraudulent or merely incorrect. In either event, the Court declines to strike Penske's motion simply because Martin objects to the contents of a document appended to that motion as inaccurate.

Accordingly, the Court **DENIES** Martin's Motion to Strike and will consider Penske's summary judgment motion below.

*** 

In sum, the Court overrules Penske's evidentiary objections and denies Martin's motion to strike. Having resolve these two threshold issues, the Court proceeds to the merits of the parties' summary judgment motions.

B.    *FMLA Interference*

Martin asserts that Penske interfered with his rights under the FMLA in violation of 29 U.S.C. § 2615(a)(1) by including days in which he was granted FMLA leave when calculating his attendance points. Doc. 1, Compl., ¶¶ 4.18, 5.01–.06; Doc. 18, Pl.'s Mot., ¶¶ 1.05–.06, 3.18, 5.01–

.12. Both parties have moved for summary judgment on Martin's interference claim. *See* Doc. 18, Pl.'s Mot., ¶¶ 1.02, 5.11–12; Doc. 29, Def.'s Mot., 2–3.

Section 2615(a)(1) makes it unlawful for an employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1). To establish a prima facie case of FMLA interference, a plaintiff must demonstrate that: "(1) he was an eligible employee; (2) his employer was subject to FMLA requirements; (3) he was entitled to leave; (4) he gave proper notice of his intention to take FMLA leave; and (5) his employer denied him the benefits to which he was entitled under the FMLA." *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017). An employee must also "point to evidence of prejudice in order to recover" on his FMLA interference claim. *Jones v. Children's Hosp.*, 58 F. Supp. 3d 656, 668–69 (E.D. La. 2014); *see also Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 788 (5th Cir. 2017) ("To prove an interference claim, a plaintiff 'must at least show that [the defendant] interfered with, restrained, or denied [his] exercise or attempt to exercise FMLA rights, and that the violation prejudiced [him].'" (alterations in original) (quoting *Bryant v. Tex. Dep't of Aging & Disability Servs.*, 781 F.3d 764, 770 (5th Cir. 2015)).

In addition to these elements, a plaintiff—under certain circumstances—may be required to make some showing of discriminatory intent to sustain his FMLA interference claim. *See DeVoss v. Sw. Airlines Co.*, 903 F.3d 487, 491–92 (5th Cir. 2018). To determine whether a showing of discriminatory intent is required, courts look to the nature of the FMLA right asserted by the interference claim. *See id.* at 491. "The FMLA creates two types of protections—entitlement rights (sometimes also called prescriptive rights) and proscriptive rights." *Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 526 (5th Cir. 2021). An employee who brings an interference claim asserting the denial of entitlement rights under the FMLA need not establish discriminatory intent to prevail.

-11-

*See Mauder v. Metro. Transit Auth. of Harris Cnty.*, 446 F.3d 574, 580 (5th Cir. 2006) ("Because the issue is the right to an entitlement, the employee is due the benefit if the statutory requirements are satisfied, regardless of the intent of the employer." (citations omitted)). Proscriptive rights, on the other hand, "protect[] employees from retaliation or discrimination for exercising their rights under the FMLA." *Id.* As such, an interference claim brought complaining of an employer's violation of an employee's proscriptive rights requires a showing of intentional discrimination. *Haley v. All. Compressor LLC*, 391 F.3d 644, 650–51 (5th Cir. 2004); *see DeVoss*, 903 F.3d at 491; *Campos*, 10 F.4th at 527–30.

The Court concludes that neither party is entitled to summary judgment on Martin's FMLA interference claim because genuine issues of material fact remain. While Penske argues that Martin is required to show discriminatory intent, Martin's interference claim asserts his entitlement rights under the FMLA. Therefore, he need not establish discriminatory intent.

1.   <u>Prima Facie Interference Case</u>

There is no genuine dispute that Martin was an eligible employee, that Penske was subject to the FMLA, that Martin was entitled to leave, and that Martin notified Penske of his intent to take leave. *See* Doc. 22, Def.'s Resp., 9–10, As such, the only disputed issues with respect to Martin's prima facie case are whether Penske interfered with Martin's FMLA rights, and if so, whether Martin was prejudiced thereby. *See Caldwell*, 850 F.3d at 245.

i.   *Interference with FMLA rights*

There is a genuine issue of material fact as to whether Penske interfered with Martin's FMLA rights. While the FMLA does not define the term "interference," regulations from the Department of Labor "provide that interference with the exercise of an employee's rights includes not only refusing to authorize FMLA leave, but discouraging an employee from using such leave."

*Arismendiz v. Univ. of Tex. at El Paso*, 536 F. Supp. 2d 710, 715 (W.D. Tex. 2008); *see* 29 C.F.R.
§ 825.220(b). And, as particularly relevant here, the regulations further indicate that interference
would include using an employee's "taking of FMLA leave as a negative factor in employment
actions" or counting FMLA leave "under no fault attendance policies." 29 C.F.R. § 825.220(c); *see
also* U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter Family Medical Leave Act (FMLA),
FMLA 2003-4, 2003 WL 25739620, at *1 (July 29, 2003) ("Point systems, sometimes, referred to
as 'no fault' attendance policies, do not necessarily violate the FMLA as long as points are not
assessed for employees who are absent due to any FMLA qualifying reason."). But at a minimum,
to establish interference, an "employee must show . . . that an employer did not respect the
employee's FMLA entitlements." *Bell v. Dallas Cnty.*, 432 F. App'x 330, 334 (5th Cir. 2011)
(unpublished per curiam decision); *see also Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 347 (5th
Cir. 2013).

 Here, Martin has introduced evidence suggesting that Penske interfered with his FMLA
rights by counting days for which he was granted FMLA leave when calculating his attendance
points. It is undisputed that Martin requested FMLA leave for six days in 2021: May 2 through
May 5, and May 10 through May 11. *See* Doc. 33-6, Pl.'s App'x, 46; Doc. 31, Def.'s App'x, 38. On
June 8, 2021, Penske's HR Manager, Atziri Cardoza, received an email from Penske's Leave of
Absence Team which stated: "[Martin's] FMLA: Continuous from 5/2/2021 to 5/5/2021, and
5/10/2021 to 5/11/2021 has been denied for not sending in his documentation for leave." Doc. 33-
10, Pl.'s App'x, 55. Two minutes after receiving this email, Cardoza informed Martin's supervisor,
Shvon Evans, that "[Martin's] [leave of absence] was denied due to lack of documentation. Please
issue him attendance points and the respective [corrective counseling]." *Id.* One week later, on
June 15, 2021, Martin received a corrective counseling form, which indicated that he had incurred

6.5 attendance points. *See* Doc. 33-12, Pl.'s App'x, 59–60; Doc. 31, Def.'s App'x, 47–48. Moreover, Penske's termination action form stated that Martin "failed to provide the appropriate medical certification to approve several absences that he had in the month of May and that had resulted in him accruing 6.5 points." Doc. 33-13, Pl.'s App'x, 61–62. From this evidence, a reasonable juror could conclude that Martin received at least one attendance point for each of the six days in May 2021 in which his request for FMLA leave was initially denied. *See Anderson*, 477 U.S. at 248 ("[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

However, on June 22, 2021, Penske's third-party administrator partially reversed its previous denial of Martin's request for FMLA leave and approved Martin's absence for three of the six days he requested: May 2 through May 4. Doc. 33-14, Pl.'s App'x, 63. Thus, because a reasonable juror could infer that Martin received an attendance point for each of the six days that he requested FMLA leave, and because Martin was granted FMLA leave for three of those six days, a reasonable juror could further conclude that Penske included the three dates on which Martin was granted leave in calculating his attendance point total. And given that FMLA interference includes counting FMLA leave "under no fault attendance policies," 29 C.F.R. § 825.220(c), the Court concludes that Martin has introduced evidence sufficient to create a genuine issue of material fact as to whether Penske interfered with his FMLA rights. *See Anderson*, 477 U.S. at 248.

Penske's arguments to the contrary are unpersuasive. First, Penske claims that it did not interfere within his FMLA rights "because Penske terminated his employment due to [Martin's] accrual of more than seven attendance points in a rolling twelve-month period." Doc. 30, Def.'s Br., 12. But Martin does not dispute that Penske credited him with seven attendance points; he claims that Penske improperly included days for which he was granted FMLA leave in reaching

this figure. *See* Doc. 28, Pl.'s Sur-Reply, ¶¶ 1.06–.07. Second, Penske contends that Martin cannot establish interference because he "admit[ted] that he applied for FMLA leave . . . and does not contend that anyone at Penske restricted, thwarted, or otherwise interfered with his ability to do so." Doc. 30, Def.'s Br., 9. However, an employee need only show interference with the exercise or attempted exercise of his FMLA rights, which includes more than the employee's ability to request FMLA leave. *See, e.g.*, *Acker*, 853 F.3d at 788 ("An interference claim merely requires proof that the employer denied the employee his entitlements under the FMLA." (citations omitted)). Here, Martin claims that Penske improperly included dates for which he was entitled to FMLA leave in calculating his attendance points, *see* Doc. 18, Pl.'s Mot., ¶ 3.18, and if this contention is true, Penske interfered with his rights notwithstanding the fact that it did not impede his attempts to request leave. *See* 29 C.F.R. § 825.220(c). Third, Penske argues that Martin's interference claim fails because "he applied for, received, and took FMLA leave on . . . three days." Doc. 22, Def.'s Resp., 10. But the granting of leave does not absolve an employer from liability for interference under the FMLA: "Interfering with the exercise of an employee's rights would include . . . not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." 29 C.F.R. § 825.220(b).

In short, Martin's claim that Penske included dates for which he was granted leave in calculating his attendance points would—if true—establish interference. Thus, the question becomes whether Martin has come forward with evidence in support of this claim sufficient to survive summary judgment. The Court concludes that he has.

   ii.   *Prejudice*

While Martin has presented evidence sufficient to create a triable issue on the question of Penske's interference, he may only prevail on his interference claim if he can show that he was

prejudiced by that interference. *See Acker*, 853 F.3d at 788. "Prejudice exists when an employee loses compensation or benefits by reason of the violation, sustains other monetary losses as a direct result of the violation, such as the cost of providing care, or suffers some loss in employment status such that equitable relief is appropriate." *Jones*, 58 F. Supp. 3d at 669. In this case, Martin seeks to show prejudice with evidence that he was terminated as a result of Penske's alleged interference—including FMLA leave days in his attendance points calculation. *See, e.g., Lubke v. City of Arlington*, 455 F.3d 489, 498 (5th Cir. 2006). The Court concludes that genuine issues of material fact also exist as to whether Martin was prejudiced by Penske's claimed interference.

There is no genuine dispute that the accrual of seven attendance points subjects employees to termination under Penske's attendance policy, *see* Doc. 23, Def.'s App'x, 2–3, and that Martin had been credited with at least seven attendance points at the time of his dismissal, *see* Doc. 33-13, Pl.'s App'x, 62; Doc. 34-1, Ex. 1, 2. Nor does Penske seriously contest that it counted Martin's FMLA-protected absences in calculating his attendance points. Doc. 22, Def.'s Resp., 5. Instead, the parties' only dispute seems to be whether Martin had accrued at least seven attendance points independent of the three days in which he was granted FMLA leave and thus would have been subject to termination. *See id.*; Doc. 24, Pl.'s Reply, ¶ 1.05. There is a genuine dispute as to whether Martin was prejudiced by Penske's alleged interference.

On the one hand, Martin has introduced evidence tending to show that, had Penske not interfered with his FMLA rights, he would not have been subject to termination. The parties are in agreement that, on June 15, 2021, Penske issued a corrective counseling form to Martin which stated that he had incurred 6.5 attendance points. *See* Doc. 33-12, Pl.'s App'x, 59; Doc. 31, Def.'s App'x, 47–48. In addition, Penske's termination action form, which was completed on June 21, indicated that "[o]n June 15, 2021[,] [Penske] was made aware that . . . Martin failed to provide

the appropriate medical certification to approve several absences that he had in the month of May and that had resulted in him accruing 6.5 points." Doc. 33-13, Pl.'s App'x, 61–62. A fact finder could reasonably conclude that the corrective counseling and termination action forms—both of which were drafted by Penske and stated that Martin had accrued 6.5 attendance points as of June 15—accurately reflected the total number of attendance points Martin had received as of June 15. There is no dispute that Martin missed work the following day, June 16, which would have brought his attendance point total to 7.5 and rendered him eligible for dismissal. *See* Doc. 24, Pl.'s Reply, ¶ 1.05; Doc. 33-13, Pl.'s App'x, 61–62; Doc. 23, Def.'s App'x, 2. Martin did not incur any further attendance points from June 16 to the date of his dismissal, June 22, 2021. Doc. 33-13, Pl.'s App'x, 61–62. Thus, Martin has produced evidence showing that he had exactly 7.5 attendance points at the time of his termination. And, as previously explained, there is also evidence supporting the claim that Penske interfered with Martin's FMLA rights by including Martin's three FMLA-protected absences in calculating his attendance point total. As such, a reasonable juror could conclude (a) that Martin had been credited with only 7.5 attendance points at the time of his termination, and (b) that at least three of those points were attributable to Penske's interference. And from these two propositions a reasonable juror could further conclude that Martin was prejudiced by Penske's interference: had Penske not interfered with Martin's rights by including those three FMLA leave days in calculating his points, Martin would have only accrued 4.5 attendance points and thus would not have been subject to termination under Penske's attendance policy, which requires at least seven points before an employee may be fired.

On the other hand, Penske has introduced evidence suggesting that Martin had incurred at least eight attendance points independent of the days in which he was granted FMLA leave. In a sworn declaration, Penske's HR Manager, Atziri Cardoza, stated that Martin was absent from

work for a total of eleven days in 2021: (1) February 18, (2) February 19, (3) May 2, (4) May 3, (5) May 4, (6) May 5, (7) May 6, (8) May 7, (9) May 10, (10) May 11, and (11) June 16. Doc. 31, Def.'s App'x, 64–66. Disregarding the three FMLA protected absences, Cardoza indicated that Martin received a point for each of the remaining eight days he missed in 2021. *See id*. If Cardoza is to be believed, then Martin was not prejudiced by Penske's interference as he still would have been subject to termination under Penske's attendance policy given that he had received at least eight points independent of his three FMLA protected absences.

Accordingly, there is conflicting evidence as to whether Martin was prejudiced. Because genuine issues of material fact remain which pertain to Martin's prima facie case for FMLA interference, Martin, who bears the burden of proof on this cause of action at trial, is not entitled to summary judgment on his interference claim. *See Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) ("[I]f the movant bears the burden of proof on an issue . . . he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor.").

2.    Martin Need Not Show Discriminatory Intent

Penske argues that, even if Martin has come forward with sufficient evidence in support of his prima facie interference claim, it is still entitled to summary judgment because Martin failed to establish discriminatory intent under the *McDonnell-Douglas* framework. Under that framework, after an employee establishes his prima facie case, the burden shifts to the employer to come forward with a legitimate, non-discriminatory reason for the employment actions at issue; if the employer does so, the burden shifts to the employee to show that the employer's proffered reason was pretextual. *See DeVoss*, 903 F.3d at 491–92; *Mauder*, 446 F.3d at 583. Penske claims that it has articulated a legitimate, non-discriminatory reason for the employment action and that Martin

-18-

has failed to establish that this reason was pretextual under *McDonnell Douglas*. Doc. 30, Def.'s, Br., 13–15. Penske's argument, of course, assumes that *McDonnell Douglas* applies to Martin's interference claim. The Court concludes that it does not because Martin's interference claim asserts the denial of an FMLA entitlement and thus he need not establish discriminatory intent to prevail.

As previously explained, not all FMLA interference claims require a showing of discriminatory intent. *See DeVoss*, 903 F.3d at 491. Specifically, an interference claim which asserts the denial of an FMLA entitlement does not require that the employer acted discriminatorily. *Nero v. Indus. Molding Corp.*, 167 F.3d 921, 927 (5th Cir. 1999). Entitlements refer to the substantive rights created by the FMLA, such as an employee's right to take twelve weeks of unpaid leave per year for certain health conditions and to return following a leave of absence to the same or an equivalent position. 29 U.S.C. §§ 2612(a)(1), 2614(a)–(b); *see Bocalbos v. Nat'l W. Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1998). "[C]laims for violations of these rights invoke entitlement or interference theories and are brought under § 2615(a)(1)." *Haley*, 391 F.3d at 649. "'As to these rights . . . the employee need not show that the employer treated other employees less favorably, and an employer may not defend its interference with the FMLA's substantive rights on the ground that it treats all employees equally poorly without discriminating.'" *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 159 (1st Cir. 1998).

On the other hand, interference claims which assert a violation of the FMLA's proscriptive provisions do require a showing of discriminatory intent and thus are subject to *McDonnell Douglas*. *See DeVoss*, 903 F.3d at 491; *Campos*, 10 F.4th at 527–30. "The proscriptive FMLA rights include an employee's right not to be discriminated or retaliated against for having exercised the right to take FMLA leave." *Haley*, 391 F.3d at 649. "Claims for violations of these rights are brought under

§ 2615(a)(2)," *id.*, and generally require that the employer act with discriminatory intent and thus are subject to the *McDonnell-Douglas* burden shifting framework *See DeVoss*, 903 F.3d at 491; *Campos*, 10 F.4th at 527–30.

Martin's interference claim asserts the denial of an entitlement under the FMLA, and thus he is not required to show discriminatory intent under *McDonnell Douglas*. Among the FMLA's entitlements is an employee's right to return to work following a leave of absence on the same terms and conditions of employment as existed prior to having taken FMLA leave. 29 U.S.C. § 2614(a); 29 C.F.R. § 825.215; *see also Haley*, 391 F.3d at 649; *Mauder*, 446 F.3d at 580. In this case, Martin contends that, before taking FMLA leave, he had zero attendance points. Doc. 33-1, Pl.'s App'x, 7. Under the FMLA, Martin was entitled to return to work under these same terms and conditions—i.e., with zero attendance points. *See* 29 U.S.C. § 2614(a); 29 C.F.R. § 825.215; *see also Haley*, 391 F.3d at 649; *Mauder*, 446 F.3d at 580. Martin's FMLA interference claim, however, contends that Penske denied him this entitlement by counting his FMLA-protected absences when calculating his attendance point total. As Martin's interference claim asserts the denial of an entitlement under the FMLA, the Court concludes that Martin was not required to show discriminatory intent in order to prevail, which means the *McDonnell-Douglas* framework is inapplicable here. *See Hodgens*, 144 F.3d at 159. Thus, notwithstanding Penske's proffered reason for its interference, Penske is not entitled to summary judgment for the same reason that Martin is not—genuine issues of fact remain as to Martin's prima facie interference claim.

\*\*\*

In sum, genuine issues of material fact pertaining to Martin's FMLA interference claim remain. While Martin has presented sufficient evidence on each element of his prima facie case to survive Penske's motion, he has not proven his case as a matter of law such that he can prevail on

his own motion. Accordingly, the Court **DENIES** both Martin and Penske's Motions for Summary Judgment on Martin's FMLA interference claim.

C.     *FMLA Retaliation[3]*

Martin also brings a claim for FMLA retaliation against Penske, arguing that he was terminated by Penske in retaliation for taking FMLA leave. Doc. 1, Compl., ¶¶ 5.01–.06. Both parties have moved for summary judgment on Martin's retaliation claim. Doc. 18, Pl.'s Mot., ¶¶ 1.02, 5.11–12; Doc. 29, Def.'s Mot., 1–2. The Court concludes that Penske is entitled to summary judgment because Martin has not shown that Penske acted with retaliatory animus in terminating his employment.

Unlike Martin's interference claim, his retaliation claim asserts a violation of the FMLA's proscriptive provisions and thus requires a showing of retaliatory intent on the part of Penske. *See DeVoss*, 903 F.3d at 491–92. In the absence of direct evidence of retaliatory intent, courts generally analyze FMLA retaliation claims under the three-part *McDonnell-Douglas* framework. *See Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332–33 (5th Cir. 2005). Under that framework, an employee must first come forward with evidence establishing a prima facie case for retaliation. *See id.* at 332. If the employee provides sufficient evidence in support of each element of his prima facie case, the burden then "shifts to the employer to articulate a legitimate, non-[retaliatory] reason for the adverse employment action." *Id.* "If the employer succeeds in doing so, the burden

---

[3] As a technical matter, the FMLA does not itself expressly proscribe retaliation of the kind pled by Martin. Instead, such claims fall within the FMLA's prohibition against interfering with an employee's FMLA rights: "The Act's prohibition against interference prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights." 29 C.F.R. § 825.220(c). Nevertheless, the Court analyzes Martin's retaliation claim separately in keeping with common practice. *See e.g.*, *Acker*, 853 F.3d at 788–91.

33-14, Pl.'s App'x, 63. And while Penske disputes the third element of Martin's prima facie case, Martin has also shown that there is a causal connection between his termination and his request for FMLA leave. "When evaluating whether the adverse employment action was causally related to the FMLA protection, [a] court shall consider the 'temporal proximity' between the FMLA leave, and the termination." *Mauder*, 446 F.3d at 583. Here, Martin requested his FMLA leave on May 14, 2021. *See* Doc. 33-6, Pl.'s App'x, 46; *see also* Doc. 30, Def.'s Br, 6. He was terminated a little over a month later on June 22, 2021, Doc. 33-1, Pl.'s App'x, 7. The Fifth Circuit has held that an employee's taking FMLA leave "approximately one month" prior to his termination "is close enough in time to create a causal connection." *Campos*, 10 F.4th at 528. As such, Martin has established each element of his prima facie case. *See id.*

As Martin established his prima facie case, the burden shifts to Penske to articulate a legitimate, non-retaliatory reason for terminating Martin. *See Richardson*, 434 F.3d at 332. Penske contends that it terminated Martin because he violated the company's attendance policy, which provides for the termination of an employee who accrues more than seven attendance points. Doc. 30, Def.'s Br., 5–6, 13–14. "[T]he Fifth Circuit has held that excessive absenteeism and/or a failure to show up for work is a legitimate, nonretaliatory reason for the termination of employment." *Amedee v. Shell Chem. LP-Geismer Plant*, 384 F. Supp. 3d 613, 635 (M.D. La. 2019) (collecting cases), *aff'd sub nom. Amedee v. Shell Chem., L.P.*, 953 F.3d 831 (5th Cir. 2020). Here, there is no dispute that Martin had been credited with more than seven attendance points prior to his termination. *See* Doc. 33-12, Pl.'s App'x, 59; Doc. 31, Def.'s App'x, 47–48; Doc. 24, Pl.'s Reply, ¶ 1.05; Doc. 33-13, Pl.'s App'x, 61–62. While the parties contest whether Martin's seven attendance points included FMLA-protected absences, that Penske may have improperly concluded that Martin had accrued seven attendance points independent of Martin's FMLA leave does not

necessarily render its explanation retaliatory or otherwise illegitimate. *See DeVoss*, 903 F.3d at 492. This is because, unlike his interference claim, Martin's retaliation claim requires some showing of retaliatory intent on the part of Penske. *See Cuellar*, 731 F.3d at 349 (Elrod, J., concurring) ("[C]laims that arise from the deprivation of an FMLA entitlement do not require a showing of discriminatory intent, whereas claims that arise from alleged retaliation for an employee's exercise of FMLA rights do."). Thus, what matters is whether Penske had a good-faith belief that Martin had accrued seven or more attendance points due to unprotected absences, which is addressed at the third step in the *McDonnell-Douglas* framework. *See Jackson v. BNSF Ry. Co.*, 751 F. App'x 509, 511 (5th Cir. 2018). As such, the Court concludes that Penske has met its burden of articulating a legitimate, non-retaliatory reason for terminating Martin.

Because Penske articulated a legitimate, non-retaliatory reason for the adverse employment action, Martin must now "offer sufficient evidence to create a genuine issue of fact either that (a) the employer's proffered reason is a pretext for [retaliation], or . . . (b) that the employer's reason, although true, is but one of the reasons for its conduct, another of which was [retaliation]." *Richardson*, 434 F.3d at 333. Martin has not carried his burden to show pretext or that retaliation was one reason for his termination.

Martin has failed to establish that Penske's articulated reason for terminating him was pretextual. The pretext inquiry "focuses on whether [Pesnke's] explanation was the true basis of its action, the real reason, rather than on the accuracy of the explanation." *See Ray v. United Parcel Serv.*, 587 F. App'x 182, 191 (5th Cir. 2014) (citations omitted). "To establish that the proffered nondiscriminatory reason is mere pretext, [Martin] must show that [Penske's] explanation is false or unworthy of credence." *See DeVoss*, 903 F.3d at 492. In this case, however, Martin cannot show pretext from the mere fact that Penske fired him in part due to FMLA-protected absences; he must

further demonstrate that "[Penske's] error was a pretext for discrimination." *See Amedee v. Shell Chem.*, L.P., 953 F.3d 831, 835 (5th Cir. 2020).

Here, the evidence demonstrates that Martin's request for FMLA leave was initially denied on June 2, 2021, and he was informed that he had 6.5 absences on June 15, 2021. Doc. 33-9, Pl.'s App'x, 54; Doc. 33-12, Pl.'s App'x, 59–60; Doc. 31, Def.'s App'x, 47–48. Martin missed work the next day, June 16, bringing his attendance point total to 7.5. *See* Doc. 33-13, Pl.'s App'x, 61–62. Martin's supervisor recommended him for termination on June 21, 2021. *Id*. At the time it was recommended that Martin be terminated, none of Martin's absences were protected under the FMLA. *Compare* Doc. 33-9, Pl.'s App'x, 54, *with* Doc. 33-14, Pl.'s App'x, 63. Thus, Penske's articulated reason for firing Martin was not false at the time it decided to terminate Martin. The next day, June 22, 2024, Martin's leave was approved by Penske's third-party administrator; however, that same day, Martin was informed that his employment had been terminated.[4] Doc. 33-14, Pl.'s App'x, 63; Doc. 33-1, Pl.'s App'x, 6. Martin has presented no evidence suggesting that Penske was aware his FMLA leave was approved when it notified Martin of his termination. Without such evidence, the Court cannot say that the record supports the inference that Penske's purported reason for firing Martin was made in bad faith or unworthy of credence. *See DeVoss*, 903 F.3d at 492; *Amedee*, 953 F.3d at 835. Without evidence suggesting Penske knew that Martin took protected leave at the time it fired Martin, it is hard to see how the act of firing Martin could have been taken in retaliation for his taking FMLA leave.

---

[4] It is unclear whether Martin was terminated before or after he received notice that his FMLA leave was approved and whether Penske was made aware that Martin's FMLA leave had been approved before it notified Martin of his termination.

For similar reasons, Martin has not shown that retaliation was one of the reasons that Penske terminated his employment. *Richardson*, 434 F.3d at 333. Given that there is no evidence suggesting Penske was aware Martin took FMLA protected leave when it terminated him, there is likewise no evidence suggesting Penske was motivated by retaliatory animus in firing him.

As Martin failed to come forward with evidence suggesting that Penske's proffered reason for terminating him was a mere pretext or that retaliatory animus was a motivating factor in that decision, there is no genuine issue of material fact for trial on Martin's FMLA retaliation claim. Under these circumstances, Penske is entitled to summary judgment. Accordingly, the Court **GRANTS** Penske's Motion as to Martin's FMLA retaliation and discrimination claims.

D.     *Disability Discrimination*

Martin also brings claims against Penske for disability discrimination under the ADA and the TCHRA. Doc. 1, Compl., ¶¶ 6.01–09. Penske has only moved for summary judgment on Martin's disability discrimination claim under the ADA. Doc. 29, Def.'s Mot., 3. The Court concludes that Penske is entitled to summary judgment on Martin's ADA claim because Martin has produced no evidence suggesting that he was or is disabled.

The ADA prohibits an employer from discriminating against a "qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Where, as here, there is no direct evidence of disability discrimination, the Court analyzes an employee's disability discrimination claim using the *McDonnell-Douglas* framework outline above. *See Bennett v. Dallas Indep. Sch. Dist.*, 936 F. Supp. 2d 767, 776 (N.D. Tex. 2013) (Fitzwater, C.J.). As explained, the first step in this framework is the plaintiff's prima facie case. *See id.* "To establish a prima facie discrimination claim under the ADA, a plaintiff must prove: (1) that he has a disability; (2) that he was qualified for the job; and (3) that

he was subject to an adverse employment decision on account of his disability." *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014) (citation and alteration omitted).

Martin has failed to establish his prima facie case of discrimination because he has presented no evidence to show that he was or is disabled. The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). "Major life activities include eating, sleeping, walking, reading, concentrating, seeing, and hearing." *Coleman v. Ark Contracting Servs., LLC*, No. 3:21-CV-2553-N, 2023 WL 159777, at *3 (N.D. Tex. Jan. 11, 2023) (Godbey, C.J.) (citing 42 U.S.C. § 12102(2)(A)). "'Substantially limits' means that the individual is limited 'to perform a major life activity as compared to most people in the general population.'" *Hernandez v. Clearwater Transportation, Ltd.*, 550 F. Supp. 3d 405, 412 (W.D. Tex. 2021) (quoting 29 C.F.R. § 1630.2(j)(1)(ii)).

The record evidence is insufficient to demonstrate that Martin was disabled under the ADA. First, the evidence does not show that Martin actually suffered from a physical or mental impairment that substantially limited a major life activity at the time of his termination. *See* 42 U.S.C. § 12102(1)(A).  "Under the actual disability prong, the relevant determination is whether the plaintiff was disabled *at the time of the adverse employment action*." *Willis v. Noble Env't Power, LLC*, 143 F. Supp. 3d 475, 480 (N.D. Tex. 2015) (Robinson, J.) (emphasis added). In this case, the only adverse employment action alleged is Martin's termination, which occurred on June 22, 2021. *See* Doc. 1, Compl., ¶ 6.07; Doc. 33-1, Pl.'s App'x, 3–4. Martin testified that, after his car accident on May 2, 2021, he suffered from neck and back pain which rendered him temporarily disabled, although he no longer considers himself disabled. *See* Doc. 31, Def.'s App'x, 27–28. While Martin sought medical attention the day of his accident, he was released from the hospital

approximately four hours after his crash, and his hospital discharge papers stated that he could return to work in two days with no restrictions. *See id.* at 27–28, 37. Moreover, Martin only requested FMLA leave through May 11, 2021, *see* Doc. 33-6, Pl.'s App'x, 46, and, after this point, he did not miss another day of work until June 16, 2021, *cf.* Doc. 31, Def.'s App'x, 64–66. There is no indication that he missed work on June 16 due to his claimed disability. Under these circumstances, the Court concludes that no reasonable fact finder could find that Martin was actually disabled on the date of his termination.

Second, Martin has not shown that he had a history of disability. "An individual has a record of a disability if the individual has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k)(1). There is no evidence that, prior to the accident, Martin ever suffered from—or was misclassified as having—an impairment that substantially limits his major life activities. And Martin admits that he does not currently suffer from any disability. *See* Doc. 31, Def.'s App'x, 27–28. At the absolute most, Martin has introduced evidence suggesting that he was disabled for a limited period of time immediately following his car accident. But this fails to show that he had "a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k)(1).

Third, Martin failed to establish that he was regarded as having a disability. Expressly excluded from the "regarded as" prong of the disability definition are "impairments that are transitory and minor." 42 U.S.C. § 12102(3)(B). "A transitory impairment is an impairment with an actual or expected duration of 6 months or less." *Id.* Here, there is persuasive evidence demonstrating that Martin could not have been regarded as having a disability: the hospital discharge papers, the relatively short length of Martin's FMLA leave request, and his attendance

record from May 12, 2021, to June 15, 2021, all support the conclusion that Martin's impairments were transitory and minor. *See* Doc. 31, Def.'s App'x, 37, 44, 64–66. Martin offers nothing to rebut this evidence. As such, Martin failed to demonstrate that Penske regarded him as having a disability.

In short, to establish that he was disabled, Martin needed to present evidence showing he was either (1) actually disabled, (2) historically disabled, or (3) regarded as disabled. *See* 42 U.S.C. § 12102(1). He has failed to do so. Thus, he cannot satisfy the prima facie elements of his ADA discrimination claim. As a result, Penske is entitled to summary judgment on Martin's disability discrimination claim under the ADA.

The Court notes, however, that Martin has also asserted a claim for disability discrimination under the TCHRA. Doc. 1, Compl., ¶¶ 6.01–.09. Penske, however, did not mention or discuss Martin's state-law disability discrimination in its motion or briefing. *See* Doc. 29, Def.'s Mot.; Doc. 30, Def.'s Br.; Doc. 34, Def.'s Reply. "[I]t would be error to grant summary judgment on a ground not raised." *Jackson v. Fed. Exp. Corp.*, No. 3:03-CV-2341-D, 2006 WL 680471, at *9 (N.D. Tex. Mar. 14, 2006) (Fitzwater, J.). This remains true even though the analysis for disability discrimination claims under the ADA is identical to the analysis of such claims under the TCHRA.[5] *See id.* ("Because [Defendant] is entitled to summary judgment dismissing [Plaintiff's] Title VII/ § 1981 race discrimination claim based on his termination, it follows inexorably that [Plaintiff] cannot recover under the TCHRA on this claim. But because [Defendant] did not raise TCHRA in its motion, it would be error to grant summary judgment on a ground not raised."); *see*

---

[5] While the Court can grant summary judgment on a claim *sua sponte*, it can only do so if the affected party receives adequate notice. *See Jackson*, 2006 WL 680471, at *9. Here, Martin has received no notice that summary judgment is sought on his state-law disability discrimination claim, and thus it would be improper to award judgment as a matter of law on that claim *sua sponte*.

*also Williams v. Tarrant Cnty. Coll. Dist.*, 717 F. App'x 440, 444–45 (5th Cir. 2018) ("Because TCHRA parallels the language of the ADA, Texas courts follow ADA law in evaluating TCHRA discrimination claims." (citations and alteration omitted)). Accordingly, Martin's TCHRA claim for disability discrimination will proceed to trial.

For these reasons, the Court **GRANTS** Penske's Motion for Summary Judgment on Martin's ADA claim. Thus, the Court **DISMISSES** Martin's claim for disability discrimination under the ADA. Martin's disability discrimination claim under the TCHRA, however, will proceed to trial.

E.    *Title VII Claims*

Finally, Penske purports to move on Martin's claim for "sex discrimination under Title VII of the Civil Right Act of 1964." Doc. 29, Def.'s Mot., 4. But Martin has not asserted a claim for sex discrimination in his Complaint, *see generally* Doc. 1, Compl., ¶¶ 5.01–7.06, and he testified that nothing in this case had to do with sex discrimination, Doc. 31, Def.'s App'x, 29. Penske necessarily cannot show it is entitled to judgment as a matter of law on a non-existent claim. Thus, the Court **DENIES AS MOOT** Penske's Motion for Summary Judgment as to any claim for sex discrimination.

However, while Martin has not asserted a claim for sex discrimination under Title VII, he has asserted a claim for retaliation under Title VII—Penske has not moved on this retaliation claim. Martin's Complaint lists three counts. *See* Doc. 1, Compl., ¶¶ 5.01–7.06. The first two counts cover Martin's claims under the FMLA and his claims for disability discrimination under the ADA and TCHRA. *See id.* ¶¶ 5.01–6.09. Martin's third count is titled: "**RETALIATION UNDER 42 U.S.C. § 2000E AND CHAPTER 21 OF TEXAS LABOR CODE**." *Id.* at 8 (emphasis in original). Further, the factual allegations pertaining to count three generally support a claim for

retaliation. Martin pleaded that "[Penske's] action in taking retaliation against the Plaintiff for his complaints about discriminatory treatment and unlawful employment practices was intentional, willful and malicious so that Plaintiff is entitled to recovery of exemplary damages." *Id.* ¶ 7.06. Because Penske has not moved for summary judgment on Martin's Title VII and TCHRA retaliation claim, these claims will proceed to trial.

## IV.

## CONCLUSION

For the reasons set forth above the Court **DENIES** Martin's Motion for Summary Judgment (Doc. 18) and **GRANTS IN PART** and **DENIES IN PART** Penske's Motion for Summary Judgment (Doc. 29). The Court **DISMISSES** Martin's claim for FMLA retaliation and his claim for disability discrimination under the ADA. Martin's claim for FMLA interference, his claim for disability discrimination under the TCHRA, and his claims for retaliation under Title VII and the TCHRA will proceed to trial.

SO ORDERED.

SIGNED: June 4, 2024.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

-31-