UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KEVIN MARTIN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:23-CV-0574-B |
| | § | |
| PENSKE LOGISTICS, LLC, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Kevin Martin's Motion to Alter Judgment (Doc. 66). For the following reasons, the Court **GRANTS** Martin's Motion. An amended final judgment will follow.

I.

BACKGROUND

This is a Family Medical Leave Act ("FMLA") interference case. Martin was employed by Penske Logistics, LLC ("Penske"). Doc. 33-13, Pl.'s App'x, 62. In May 2021, Martin was in a car accident and missed several days of work as a result. Doc. 34-1, Def.'s App'x, 2–3. A month after the accident, Penske fired Martin, claiming he violated the attendance policy. Doc. 33-1, Pl.'s App'x, 7.

Martin worked for Penske from 2016 to 2021. Doc. 33-13, Pl.'s App'x, 62. On May 2, 2021, Martin crashed his car while on his way to work. Doc. 31, Def.'s App'x, 16–19. Immediately following the accident, Martin went to the hospital. *Id.* at 18–19. Martin was discharged from the hospital a few hours later. *Id.* at 37. His discharge paper said he could return to work in two days. *Id.*

As a result of the accident, Martin missed his scheduled shifts at Penske on May 2, 3, 4, and 5. *See id.* at 22–26, 38. Martin returned to work May 9, 2021, when he provided his supervisor with his hospital discharge papers. *See id.* at 25–26; Doc. 33-1, Pl.'s App'x, 6. After working a full shift on May 9, Martin missed work again on May 10 and 11. Doc. 31, Def.'s App'x, 25–26, 38.

On May 14, 2021, Martin requested FMLA leave through Penske's third-party leave administrator, FMLA Source. *See id.* at 38. Martin requested that his six May absences (May 2–5, 10–11) be retroactively deemed FMLA leave. *See id.* FMLA Source acknowledged it received Martin's request the same day. *Id.* But it said it had not made a decision on his request for FMLA leave because Martin had not submitted the requisite certifications; FMLA Source explained that Martin needed to file these certifications by June 1, 2021. *Id.* at 38–39.

On June 2, 2021, FMLA Source denied Martin's request for FMLA leave in its entirety because "Documentation for Leave [was] not Received." *Id.* at 44. Under Penske's attendance policy, an employee receives one attendance point for each "absence that is not protected by [Penske] policy or by law" and one-half attendance point for arriving late or leaving early. Doc. 23, Def.'s App'x, 3. An employee with seven points can be fired. *Id.*

On June 8, 2021, Penske's HR Manager received an email from Penske's Leave of Absence Team explaining Martin's leave for May 2–5, 10–11 was denied for lack of documentation. Doc. 33-10, Pl.'s App'x, 55. Two minutes after receiving this email, the HR Manager informed Martin's supervisor that his leave of absence "was denied due to lack of documentation. Please issue him attendance points and the respective [corrective counseling]." *Id.*

On June 16, 2021—the day after having received his corrective counseling form—Martin did not appear for work. Doc. 33-13, Pl.'s App'x, 62. On June 21, 2021, Penske's HR Manager

completed a "termination action form," which recommended that Martin be fired. Doc. 33-13, Pl.'s App'x, 61–62. The termination action form stated that Martin "failed to provide the appropriate medical certification to approve several absences that he had in the month of May and that had resulted in him accruing 6.5 points." *Id.* Penske terminated Martin's employment the following day, June 22, 2021. Doc. 33-1, Pl.'s App'x, 7. However, the same day that Martin was fired, FMLA Source partially reversed its decision on Martin's request for FMLA leave and granted Martin FMLA leave for three of the six days that he initially requested: May 2–4. Doc. 33-14, Pl.'s App'x, 63.

This case proceeded to trial, and the jury found that Penske interfered with Martin's right to leave under the FMLA. Doc. 61, Jury Instructions, 11. The jury awarded Martin $75,000 in damages. Doc. 62, Jury Verdict, 2. Martin filed a Motion to Alter Judgment, requesting liquidated damages, attorney's fees, costs, and pre- and post-judgment interest. *See* Doc. 66, Mot. The Court considers the Motion below.

## II.

## LEGAL STANDARDS

A.  *Attorney's Fees*

> The determination of a fees award is a two-step process. First the court calculates the 'lodestar' which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work. The court should exclude all time that is excessive, duplicative, or inadequately documented. Once the lodestar amount is calculated, the court can adjust it based on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).
>
> *Jimenez v. Wood Cty.*, 621 F.3d 372, 379–80 (5th Cir. 2010) (citations omitted).

B.     *Liquidated Damages*

Section 2617(a)(1)(A)(iii) generally provides for doubling the actual damages awarded under the FMLA unless the employer's FMLA violation "was in good faith and . . . the employer had reasonable grounds for believing" its actions were not an FMLA violation. 29 U.S.C. § 2617(a)(1)(A)(iii).

C.     *Pre- and Post-Judgment Interest*

Pre-judgment interest "at the prevailing rate" is mandatory when an employer violates the FMLA and should be added to the damages awarded for lost wages and benefits. 29 U.S.C. § 2617(a)(1)(A)(ii). Post-trial interest is required under 28 U.S.C. § 1961.

### III.
### ANALYSIS

The Court **GRANTS** Martin's Motion to Alter Judgment. The Court finds Martin is entitled to $70,830 in attorney's fees, $5,521.85 in costs, $75,000 in liquidated damages, prejudgment interest at a rate of 5%, and post-judgment interest at a rate of 4.08%.

A.     *Martin Is Entitled to Attorney's Fees.*

The Court awards Martin $70,830 in attorney's fees. Martin can recover attorney's fees and other costs because he prevailed on his FMLA claim. *See* 29 U.S.C. § 2617(a)(3). Under the lodestar method, the Court calculates reasonable attorney's fees by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Shipes v. Trinity Indus.*, 987 F.2d 311, 319–20 (5th Cir. 1993). Martin was represented solely by William D. Masterson. Mr. Masterson worked a total of 120.25 hours at a rate of $600 per hour. Doc. 66-3, Ex. B, 1–3. Thus, Martin requests a

total of $72,150 in attorney's fees. *Id.* The Court finds that Mr. Masterson's rate is reasonable, but it deducts 2.2 hours from the total amount of time.

Masterson's hourly rate is reasonable. A reasonable hourly rate should be similar to rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). Penske does not argue that Masterson's rate is unreasonable. *See* Doc. 68, Resp., 5–8. Therefore, the Court will focus its lodestar analysis on whether Masterson reasonably expended 120.25 hours on this matter.

The Court finds that 118.05 is a reasonable number of hours for this case. "[A] district court may reduce the number of hours awarded if the documentation is vague or incomplete." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). Courts also "consider whether the attorney properly segregated her time spent pertaining to the claims on which she prevailed from other claims on which she did not prevail." *Waller v. Salvation Army*, No. 3:20-CV-01336-M-BK, 2024 WL 3939568, at *2 (N.D. Tex. Aug. 26, 2024) (Lynn, J.).

First, the Court deducts the 2.2 hours Masterson billed relating to an EEOC discrimination charge. Doc. 66-3, Ex. B, 7. In this lawsuit, Martin asserted FMLA interference, disability discrimination, and Texas state retaliation claims against Penske. Doc. 1, Compl., ¶¶ 5–7. Martin prevailed at trial on his FMLA claim. Doc. 62, Verdict. The Court will not award attorney's fees for investigation into a racial discrimination charge that Martin did not even assert, let alone prevail on, against Penske.

Penske argues that the Court should deduct 10 hours from the 19.5 hours Masterson billed on June 1, 2024. Doc. 68, Resp., 6–7. Penske believes that a 19.5-hour entry for a single day was a mistake. *Id.* at 7. Masterson replies that those 19.5 hours included work he performed between

June 1 and 4 for trial preparation. Doc. 69, Reply, 4. The Court finds this explanation persuasive because trial was originally scheduled for June 10, 2024. Doc. 11, Scheduling Order. And Masterson billed a similar number of hours in preparation for the actual trial date in September 2024. *See* Doc. 66-3, Ex. B, 8. The Court will not deduct these 10 hours.

Penske argues that the Court should deduct 3 hours from the 8 hours Masterson billed for attending mediation because the mediation only lasted 5 hours. Doc. 68, Resp., 6. In his Reply, Martin responds that the 8 hours included time spent preparing for the Mediation. Doc. 69, Reply, 4. The Court finds this credible given that the billing records do not have any entries related to preparing for mediation. *See* Doc. 66-3, Ex. B, 7. The Court will not deduct these hours.

Penske lastly argues that the Court should deduct the 8.5 hours Masterson billed for working on a Motion for Summary Judgment because the Court denied it. Doc. 68, Resp., 6. While courts consider whether attorneys segregate time working on losing claims, Penske cites no authority requiring attorneys to segregate time spent working on losing motions. *See Waller*, 2024 WL 3939568, at *2. The Court will not deduct these hours.

The lodestar is presumptively reasonable. *See Watkins v. Fordice,* 7 F.3d 453, 457 (5th Cir. 1993). Courts may consider twelve *Johnson* factors to determine whether to increase or decrease the value of the lodestar. 488 F.2d at 717–19. Penske does not argue that the lodestar should be altered because of any of these twelve factors. *See* Doc. 68, Resp., 5–7. Thus, the Court will not modify the lodestar. Martin is entitled to $70,830 in attorney's fees.

B.   *Martin is Entitled to Court Costs.*

Martin requests $5,521.85 in costs. Doc. 66, Mot., 3; Doc. 65, Bill of Costs, 1. "The [taxable] costs permitted in an FMLA action are basically the same as for taxable items for a bill of

costs under . . . § 1920." *Carroll v. Sanderson Farms, Inc.*, No. CIV.A. H-10-3108, 2014 WL 549380, at *12 (S.D. Tex. Feb. 11, 2014); 28 U.S.C. § 1920 allows a court to tax as costs:

> (1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

"In the Fifth Circuit, there is a strong presumption toward awarding costs to the prevailing party." *Waller*, 2024 WL 3939569, at *6. Martin's requests for costs adhere to these rules, and Penske does not dispute their reasonableness. *See generally* Doc. 68, Resp. The Court awards $5,521.85 in costs.

C.      *Martin is Entitled to Liquidated Damages.*

The Court awards Martin $75,000 in liquidated damages. An employer who violates the FMLA "shall be liable" for "an additional amount as liquidated damages" unless the employer "proves to the satisfaction of the court that the act or omission which violated [the FMLA] was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation." 29 U.S.C. § 2617(a)(1)(A)(iii). "The FMLA provides that a court shall award liquidated damages equal to the damages due to lost compensation plus interest." *Nero v. Indus. Molding Corp.*, 167 F.3d 921, 928 (5th Cir. 1999). The employer carries the burden to establish that its failure to obey the FMLA was in good faith. *Id.* "Even if a trial court is satisfied that an employer acted both in good faith and reasonably, [however,] it may still award liquidated damages at its discretion in any amount up to that allowed by 29 U.S.C. § 216(b)." *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1416 (5th Cir. 1990). "The district court's discretion to reduce the liquidated damages

must be exercised consistently with the strong presumption under the statute in favor of doubling." *Nero*, 167 F.3d at 929 (internal quotations omitted).

Although the FMLA does not define "good faith," courts have held that "[t]o establish good faith, an employer should demonstrate that it took 'active steps to ascertain the dictates' of the FMLA and attempted to comply with the statute." *Firth v. Don McGill of W. Hous., Ltd.*, No. H-04-0659, 2006 WL 846377, at *2 (S.D. Tex. Mar. 28, 2006), *aff'd sub nom.*, 233 F. App'x 346 (5th Cir. 2007). Courts should consider "whether an employer had a subjective intent to comply with the FMLA and whether it acted objectively reasonable in its application of the FMLA." *Id.* "[T]he subjective component of good faith involves an employer's honest intention to ascertain what the FMLA requires and to act in accordance with it, and the objective aspect of good faith considers the employer's reasonable grounds for believing its conduct comported with the FMLA." *Id.* (internal quotations and alterations omitted).

The Court finds Penske failed to prove that its failure to comply with the FMLA was in good faith. Penske argues that it acted in good faith by relying on the denial letter provided by FMLA Source, a third-party administrator. Doc. 68, Resp., 2–3. However, simply relying on a third-party administrator is not enough to establish good faith. If it were, a plaintiff would never be entitled to liquidated damages when a defendant relied on a third-party administrator. Penske instead needs to establish that the reliance itself was in good faith. *See Chanicka v. JetBlue Airways Corp.*, 243 F. Supp. 3d 356, 362–63 (E.D.N.Y. 2017).

Penske did not establish that it relied in good faith on FMLA Source's denial of Martin's medical leave. FMLA Source sent Martin a denial letter on June 2, 2021, denying Martin's medical leave for failure to submit documentation. Doc. 68, Ex. 3, 2. Penske fired Martin on June 21, 2021,

relying on this decision. Doc. 68, Ex. 7, 2–3. Then, on June 22, 2021, FMLA Source reversed its denial and granted Martin FMLA leave for two days. Doc. 68, Ex. 8, 2. Penske does not explain what steps, if any, it took to verify FMLA Source's initial denial. For example, Penske did not say that it asked Martin to confirm whether he did or did not submit documentation to FMLA Source. And Martin established that Penske's HR Director received his hospital discharge papers, which stated Martin could return to work in two days. FMLA Source either made a mistake in its initial denial or Martin later sent the proper documentation. In either case, Penske did not take any affirmatives step to inquire why the initial denial occurred and why it was subsequently reversed. Since Penske did not introduce any information to explain why its reliance on FMLA Source's denial was in good faith, Penske failed to meet its burden. Thus, the Court awards Martin $75,000 in liquidated damages. *See* Doc. 62, Jury Verdict, 2 (awarding Martin $75,000 in damages).

D.      *Martin is Entitled to Pre- and Post-Judgment Interest.*

Courts have found prejudgment interest to be mandatory under the FMLA. *Waller*, 2024 WL 3939568, at *7; *see also* 29 U.S.C. § 2617(a)(1)(ii). Penske does not object to the 5% rate Martin used in his prejudgment interest calculation, nor does Penske suggest an alternative rate. *See* Doc. 68, Resp., 5 n.1. The Court grants Martin's request for $26,250 in prejudgment interest. Martin is also entitled to post-judgment interest under 28 U.S.C. § 1961. The post-judgment rate was 4.08% for the week preceding the September 16, 2024 judgment in this case.[1] The Court awards Martin post-judgment interest at that rate from the date of Judgment until Penske pays the full amount of the Judgment.

---

[1] *Post Judgment Interest Rates 2024*, U.S. DIST. CT. N. DIST. TEX., https://www.txnd.uscourts.gov/post-judgment-rates?Year%5Bvalue%5D%5Byear%5D=2024 (last accessed Apr. 9, 2025).

## IV.

## CONCLUSION

For the above reasons, the Court **GRANTS** Martin's Motion to Alter the Final Judgment (Doc. 66). Martin is entitled to $70,830 in attorney's fees, $75,000 in liquidated damages, $5,521.85 in costs, prejudgment interest at a rate of 5% and post-judgment interest at a rate of 4.08%. An amended final judgment will follow.

**SO ORDERED.**

**SIGNED: April 28, 2025.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE